**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

—————————————————————
JOANN JEFFRIES RAMSEUR     )
         )
     **Plaintiff (*pro se*),**   )
         )
     **v.**        )     **Civil Action No. WGC-06-2995**
         )
UNITED STATES OF AMERICA   )
         )
     **Defendant.**     )
—————————————————————)

## MEMORANDUM OPINION

Pro Se Plaintiff, Joann Jeffries Ramseur ("Ms. Ramseur"), brought this action against Defendant, the United States of America ("United States"), alleging negligence by the United States in placing an "outdoor" mat with perforation holes ("perforated mat") inside a post office. The left heel of Ms. Ramseur's shoe was caught in one of the perforation holes causing her to fall. One of her left toes was fractured. The parties consented to proceed before a United States Magistrate Judge for all further proceedings in the case and the entry of a final judgment. *See* Document Nos. 11-15. Pending before the Court and ready for resolution are Plaintiff's Motion for Partial Summary Judgment (Document No. 22) and Defendant's Cross-Motion for Summary Judgment (Document No. 23). No hearing is deemed necessary and the Court now rules pursuant to Local Rule 105.6 (D. Md. 2004).

## BACKGROUND

In the early afternoon of May 13, 2005, Ms. Ramseur and her daughter, Desiree, arrived at the Largo Post Office ("Post Office") to collect their mail from a post office box. Ms.

Ramseur noticed banners, food, and festival materials promoting an eBay presentation within the Post Office.  Ms. Ramseur expressed an interest in attending the presentation and asked Desiree if she wanted to accompany her.  Desiree declined and elected to remain in the car and rest.

Upon entering the Post Office, Ms. Ramseur collected her mail and then inquired about the eBay presentation.  A postal employee told Ms. Ramseur that she could attend the presentation in a conference room of the Post Office.  Ms. Ramseur walked into the room.

The conference room was well-lit.  The podium where the speaker stood was horizontally across from the door.  Because the eBay presentation was in progress Ms. Ramseur walked diagonally across towards the back of the conference room and sat in a chair beside a wall near the rear of the conference room.  When Ms. Ramseur entered the conference room, she either walked across or around a perforated mat.  This mat was in the middle of the conference room, positioned vertically in relation to the podium.  Mem. Law Supp. Def.'s Cross-Motion Summ. J. ("Def.'s Mem."), Ex. A (Ex. #1 - Diagram).  Ms. Ramseur does not recall seeing or walking across or around the mat upon entering the conference room because she was focused on entering the room quietly.  "I look down but usually I don't look down when I'm walking into a room."  *Id.*, Ex. A (Ramseur Dep. 30:18 - 19).  The mail Ms. Ramseur carried as she walked into the conference room did not obstruct her view.  *Id.*, Ex. A (Ramseur Dep. 30:23 - 31:7).

After the presentation Ms. Ramseur had some questions for the speaker so she moved to a chair closer to the podium.  The speaker sat in a chair next to Ms. Ramseur and they conversed for approximately five to ten minutes.  Upon the completion of their conversation, Ms. Ramseur shook the speaker's hand, got out of her chair, and started walking towards the door.  The lighting remained well-lit.  While walking towards the door Ms. Ramseur fell forward onto the

floor with her head landing very near the door.  The heel of Ms. Ramseur's left shoe became "trapped" in one of the holes of the perforated mat.

Immediately after falling Ms. Ramseur felt a sharp pain radiate through her left foot. Several individuals, including the Postmaster, Reggie Rabon, and a postal employee, Tonya Duckett, came to her aid inquiring if she was all right.  Because of the sharp pain it took a minute or two before Ms. Ramseur was able to get off the floor.  Ms. Ramseur was guided to another room where she sat down.  She was provided an ice pack.  Ms. Ramseur asked someone to tell her daughter what had happened.  According to Ms. Ramseur, Mr. Rabon, the Postmaster, commented that placing the mat in the middle of the floor was not a good idea and that if a woman had been involved in the decision, a woman would have foreseen the danger.  Mr. Rabon also informed Ms. Ramseur that she could file a tort claim.  He gave Ms. Ramseur his business card.

Ms. Ramseur remained seated for approximately 20 minutes.  The ice pack never became cold.  The pain in her left foot intensified.

With the assistance of a postal employee, Ms. Ramseur walked to the lobby of the Post Office.  Meanwhile, Desiree had positioned the car as close to the entrance as possible.  A postal employee helped Ms. Ramseur enter the car.

Desiree drove Ms. Ramseur to the Doctors Community Hospital's emergency room. During the intake Ms. Ramseur's blood pressure was taken and found to be rather high.  Ms. Ramseur had not taken her blood pressure medication that day.  *Id.*, Ex. A (Ramseur Dep. 42:18 - 22).  Her left foot was x-rayed.  The x-ray showed the middle toe of the left foot had a

"comminuted fracture."[1]

The fractured toe was "buddy taped"; Ms. Ramseur was advised on how to use crutches and was given a post orthopedic shoe.  Before her release Ms. Ramseur was provided instructions, follow up directions and prescribed two medications for pain:  Motrin and Vicodin. Ms. Ramseur used these medications sparingly for about two weeks.  *See id.*, Ex. A (Ramseur Dep. 44:1 - 45:8).

Ms. Ramseur made an appointment with Dr. Stephen D. Webber, Orthopedic Specialist, for a follow up.  Dr. Webber examined her on May 18, 2005 and confirmed the diagnosis of a fractured toe.  Because of her injury Ms. Ramseur could not fulfill her commitment as a substitute teacher and Dr. Webber provided Ms. Ramseur a disability certificate declaring Ms. Ramseur is totally incapacitated from May 18 - June 13, 2005.  *See* Document No. 22, Ex. I. Ms. Ramseur used the crutches for about three to four weeks.  Ms. Ramseur had a follow up appointment with Dr. Webber on June 15, 2005.  *See* Def.'s Mem., Ex. E.  Ms. Ramseur was released from Dr. Webber's care.  He cautioned her that it would take some time for the swelling to subside.

When the swelling subsided Ms. Ramseur noticed her damaged toe was shorter and she lacked the range of mobility for this middle toe as well as the two outer toes that she had before the accident.  She had worn the surgical boot on her left foot for approximately three and a half months.  In August 2006, Ms. Ramseur discovered that the toe nail of the damaged middle toe was not growing.  Two years after the accident Ms. Ramseur still experiences stabbing pains around the damaged middle toe and cannot wear the majority of her shoes without pain.  Her

---

[1] "[A] fracture of a bone in which the separated parts are splintered or fragmented."  *Webster's New Universal Unabridged Dictionary* 412 (1996).

4

stance has been affected with the formation of calluses on two parts of her left foot.

## ADMINISTRATIVE HISTORY

On September 27, 2005, Gregory C. Faison, Tort Claims, Tort Claims Investigations Capital District, United States Postal Service, mailed a Standard Form ("SF") 95, *Claim for Damage, Injury, or Death* accompanied by a letter with instructions to Ms. Ramseur. *See* Document No. 22, Ex. L (Letter from Faison to Ramseur of 9/27/05). Ms. Ramseur completed the SF 95 and mailed it to the United States Post Office, Tort Claims, on or about November 17, 2005. *See id.*, Ex. M. Ms. Ramseur claimed $50.00 as property damage for her broken sandals and $500,000.00 as personal injury for her "broken" toe. *Id.* In a letter dated May 19, 2006, Ann E. Mandernach, Tort Claims Examiner/Adjudicator acknowledged receipt of Ms. Ramseur's SF 95 and advised:

> [B]efore this claim can be considered for adjudication it must be supported by competent evidence, defined within the SF95 claim form as follows:
>
>> (a) in support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis and the period of hospitalization or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.
>
> Medical documentation should be in the form of medical records, physician's reports, SOAP notes, x-rays, hospital records and reports, medical bills/billings etc. for treatment you received as a result of this accident.
>
> As soon as possible, please submit these materials to my attention. If you do not submit these materials, we will be unable to properly evaluate the claim and will have no recourse but to issue a denial.

5

*Id.*, Ex. N (Letter from Mandernach to Ramseur of 5/19/06).

Less than a month later, on June 8, 2006, Ms. Mandernach sent a second letter to Ms.

Ramseur, stating in pertinent part:

> The Postal Service is not legally obligated to pay all losses which
> may occur, but only those caused by the negligent or wrongful act or
> omission of an employee acting in the scope of his/her employment.
> We are guided in our determination by all the information available
> to us, including the reports of our personnel and any other persons
> acquainted with the facts.
>
> As to the incident at issue, an investigation of this matter failed to
> establish a negligent act or omission on the part of the U.S. Postal
> Service or its employees.  While we regret any injury that may have
> occurred, we cannot accept legal liability for these alleged damages.
> Accordingly, this claim is denied.
>
> In accordance with 28 U.S.C. § 2401(b) and 39 C.F.R. 912.9(a), if
> dissatisfied with the Postal Service's final denial of an administrative
> claim, a claimant may file suit in a United States District Court no
> later than six (6) months after the date the Postal Service *mails* the
> notice of that final action. . . Further, note the United States of
> America is the only proper defendant in a civil action brought
> pursuant to the Federal Tort Claims Act and such suit may be heard
> only by a federal district court.

*Id.*, Ex. O (Letter from Mandernach to Ramseur of 6/8/06, at 1).

Five months later, on November 14, 2006, Ms. Ramseur filed a Complaint against the

United States seeking $500,050.00 as damages resulting from her fall at the Largo Post Office.

## JURISDICTION AND VENUE

This claim arises under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 -

2680.  This Court has exclusive jurisdiction over this civil action.  28 U.S.C. § 1346(b).  Venue

is proper in this judicial district because the events giving rise to this action occurred in Largo,

Maryland, and Ms. Ramseur is a resident of Maryland.  28 U.S.C. §§ 1391(e), 1402(b).

Under the FTCA the United States is liable to the same extent as a private individual under similar circumstances except the United States shall not be liable for punitive damages or pre-judgment interest.  28 U.S.C. § 2674; *Bankert by Bankert v. United States*, 937 F. Supp 1169, 1180 (D. Md. 1996).  This Court must apply Maryland law since the allegedly negligent or wrongful act or omission occurred in Maryland.  28 U.S.C. § 1346(b) (emphasis added) ("[F]or injury or loss of property, or personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred*."); 28 U.S.C. § 2674.

Ms. Ramseur is not entitled to a trial by jury for her claim against the United States. "[A]ny action against the United States under section 1346 shall be tried by the court *without a jury*[.]"  28 U.S.C. § 2402 (emphasis added).

## STANDARD OF REVIEW

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56( c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrision v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394

(4th Cir. 1950).  The moving party bears the burden of showing that there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56( c); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  The court may not weigh evidence or make credibility determinations.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 323.  However, on those issues on which the nonmoving party will have the burden of proof, it is that party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence.  *Anderson*, 477 U.S. at 256.

"'A mere scintilla of evidence is not enough to create a fact issue.'"  *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967), *cert. denied*, 390 U.S. 959 (1968)).  There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

When faced with cross-motions for summary judgment, as in this case, the Court must consider "each motion separately on its own merits to determine whether either of the parties

deserve judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted).  The Court applies the same standards of review. *Monumental Paving & Excavating, Inc. v. Penn. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999) (citing *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment – – even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied*, 469 U.S. 1215 (1985)).

## ANALYSIS

A.    *Plaintiff's Partial Motion for Summary Judgment*

In its Answer to the Complaint the United States admits (1) Ms. Ramseur visited the Largo Post Office on May 13, 2005 to collect her mail and attend an eBay workshop, (2) several individuals at the workshop assisted Ms. Ramseur after she fell, and (3) Ms. Ramseur was helped to another room in order to sit down and elevate her leg.  A report was taken of the accident. Answer ¶¶ 2, 6, 8.  Although the United States does not admit the allegations in their entirety as listed in paragraphs 3 and 4, the United States does admit that at some point in time Ms. Ramseur got up to leave the eBay seminar on May 13, 2005 and further admits Ms. Ramseur fell onto the floor at the Largo Post Office on May 13, 2005.  *Id.* ¶¶ 3-4.  Ms. Ramseur notes the United States has admitted several facts except that the mat placed on the floor of the conference room caused her to fall.

Ms. Ramseur contends the United States has admitted that its employees removed the mat from one part of the Post Office and placed it on the floor of the conference room.  Ms. Ramseur claims the mat was never meant for the general public to walk upon or across and that

those  postal employees who would have come in contact with the mat were required pursuant to

USPS Code 89 to wear certain shoes for safety reasons as outlined in Handbook EL-814 March

2001, the *Postal Employee's Guide to Safety*.  Ms. Ramseur asserts liability should be imposed

on the United States based on its admissions and the violation of its regulations.

Ms. Ramseur alleges the United States is liable because it placed the mat in an area

where the general public was invited.  In the Background section of her motion Ms. Ramseur

states that she was told on the date of her accident "that the case was a tort case by a Postal

Administrator, and said Administrator admitted taking the mat that caused the fall from another

part of the facility and placing it on the floor of the room in which the Plaintiff fell."  Document

No. 22, at 2-3.  In her Statement of Facts Ms. Ramseur provides some additional details.

> Mr. Reggie W. Rabon, postmaster, told the Plaintiff that on hind sight
> it was not a good idea to have put the mat in the middle of the floor,
> and if a woman had been part of making the decision, she may have
> foreseen the danger.  He also stated that the Plaintiff could file a tort
> claim.  Mr. Rabon gave the Plaintiff his business card.

*Id.* at 6 (¶ 20).

In the Argument section of her motion Ms. Ramseur proclaims:

> [T]he witnesses that assisted the Plaintiff in particular Mr. Harnett[2]
> can attest to the shoe heel being trapped in a hole in the mat.  And
> Mr. Rabon can attest that he or someone brought the mat to the room
> and placed the mat on the floor to cover cords that were there for the
> [e]Bay presentation.

*Id.* at 9.

Ms. Ramseur did not produce, in support of her motion for partial summary judgment,

affidavits from Mr. Rabon, Mr. Harnett, or any other witnesses.  The United States, in support of

---

[2] Tim Harnett is the speaker who gave the eBay presentation at the Post Office.  He gave Ms. Ramseur his business card.  Document No. 22, at 4-5 (¶ 8).

its cross-motion for summary judgment, submitted the declaration of Yvette Wong, Acting Postmaster of the Upper Marlboro Post Office, which includes the Largo-Kettering Post Office branch.  Ms. Wong admits, "[i]n order to cover up the wires and cords needed for the computer and the presentation equipment so as to prevent a tripping hazard, Post Office employees placed a large rubber mat with perforations over the wires and cords."  Def.'s Mem., Ex. B (Wong Decl. ¶ 5).  Thus Ms. Ramseur's assertion that Mr. Rabon told her that postal employees placed the mat on the floor to cover the cords has been established.

In answering the Complaint the United States denies Ms. Ramseur's shoe became "trapped" in the mat.  *See* Answer ¶ 3.  Ms. Ramseur, as Plaintiff, has the burden of proof on a negligence claim and must factually support each element of her claim.  To establish a *prima facie* case of negligence, Ms. Ramseur must prove (1) a duty owed to her by the United States, (2) a breach of that duty, (3) causation, and (4) damages.  *B.N. v. K.K*, 312 Md. 135, 141, 538 A.2d 1175, 1178 (1988).  Even if an affidavit had been obtained from Mr. Harnett, Ms. Ramseur would still have the burden of showing that the United States' negligence caused her injury.  The fact that the heel of her shoe became "trapped" in the perforated mat, in and of itself, does not prove proximate cause.

> Proximate cause ultimately involves a conclusion that someone will be held legally responsible for the consequences of an act or omission.  This determination is subject to considerations of fairness or social policy as well as mere causation.  Thus, although an injury might not have occurred "but for" an antecedent act of the defendant, liability may not be imposed if for example the negligence of one person is merely passive and potential, while the negligence of another is the moving and effective cause of the injury[,] or if the injury is so remote in time and space from defendant's original negligence that another's negligence intervenes.

*Peterson v. Underwood*, 258 Md. 9, 16, 264 A.2d 851, 855 (1970) (citation omitted).

Regarding premises liability, under Maryland law, a property owner owes a certain duty to an individual who comes in contact with the property, and the scope of the duty owed is dependent upon the individual's status while on the property. *Baltimore Gas & Elec. Co. v. Flippo*, 348 Md. 680, 688, 705 A.2d 1144, 1148 (1998).  Maryland law recognizes four categories of individuals: (1) an invitee, (2) a licensee by invitation, (3) a bare licensee, and (4) a trespasser.  An invitee is an individual who is on the property for a purpose related to the landowner's business.  "An occupier of land has a duty to use reasonable and ordinary care to keep the premises safe for an invitee and to protect him from injury caused by an unreasonable risk that the invitee, by exercising ordinary care for his own safety, will not discover."  *Henley v. Prince George's County*, 305 Md. 320, 339, 503 A.2d 1333, 1343 (1986).  The United States concedes Ms. Ramseur was an invitee at the Post Office.  *See* Def.'s Mem., at 7-8.

The United States therefore had a duty to use reasonable and ordinary care to keep the Post Office safe for Ms. Ramseur and to protect her from any unreasonable risk that Ms. Ramseur, by exercising ordinary care for her own safety, would not have discovered.  Contrary to Ms. Ramseur's assertions, the United States' admission that its employees moved a perforated mat to cover wires and cords to prevent a tripping hazard does not establish the proximate cause of her injury.

Ms. Ramseur claims the United States' liability is also established by a violation of a regulation.

> Since the mat in question was never meant for the general public to walk on or across and all postal workers that came in contact with the mat were under USPS Code 89 which required them to we[a]r shoes that meet the USPS safety standards set forth in Handbook EL-814 March 2001, the Postal Employee's Guide to Safety, Plaintiff submits that the Defendant by its own admission and regulations is liable for

the Plaintiff's injuries, suffering, pain and the financial lost.

Document No. 22, at 3.

In her request for relief Ms. Ramseur asserts the duty of care owed to her is very high. "And that the duty of care goes beyond that of a reasonable care because Defendant's agent knew the USPS strict dress code and that only certain types of footwear is allowed to be worn by the Postal Workers to prevent undue accidents.  And by exposing the public to the mat, harm could and was probable."  *Id.* at 11.

To establish a *prima facie* case of negligence based on the violation of a statute, Ms. Ramseur must show (a) the violation of a statute or ordinance designed to protect a specific class of persons *including* Ms. Ramseur, and (b) the violation proximately caused Ms. Ramseur's injury.  *Brooks v. Lewin Realty III, Inc.*, 378 Md. 70, 79, 835 A.2d 616, 621 (2003).

The Court has reviewed Exhibit P of Plaintiff's motion, excerpts of Handbook EL-814 (March 2001), *Postal Employee's Guide to Safety*.  This handbook is a reference guide.  "This booklet provides simple easy-to-locate safety rules and procedures so that you can familiarize yourself with those rules that apply to your job. The booklet is intended for reference only." Document 22, Ex. P, at 2.  Section IV, Personal Safety and Protective Equipment, includes the following subsection about "shoes," which states in pertinent part:

> To eliminate slips, trips, and falls, do not wear the following types of shoes on the workroom floor:
>
> — Heels more than 1 ½ inches and soles more than ½ inch in height.
>
> — Spiked heels, regardless of height.
>
> — Open shoes (including open sides, toes, or heels) such as thongs, sandals, mules, house slippers, clogs, wedgies, etc.

— Heels with steel taps.

— Shoes with cloth, nylon, or mesh-woven tops, such as tennis shoes, athletic or jogging shoes (except those with leather or leatherlike uppers), moccasins, etc.

— Shoes no longer adequate because of disrepair.

*Id.*, Ex. P, at 7-8.

Another excerpt from the handbook is entitled Section VI, Machinery and Electrical Equipment.  Subsection E addresses "cords" and states in pertinent part:

As much as possible, keep extension cords off the floor. If it is absolutely necessary to put such cords on the floor, use Underwriters Laboratories (UL)-approved or certified testing laboratory-approved temporary floor covers to prevent tripping on or damaging the cord.

*Id.*, Ex. P, at 9-10.

The Court infers from these excerpts that Ms. Ramseur contends the Post Office "violated" its own safety guide by placing the perforated mat on top of wires and cords in the conference room instead of UL-approved or certified temporary floor covers and, further created a hazard by placing the perforated mat in an area where the general public would wear "prohibited" shoes and thus likely slip, trip, or fall.  Ms. Ramseur was wearing open shoes, *i.e.,* sandals with heels when she fell.  *See* Def.'s Mem., Ex. A (Ramseur Dep. 47:11 - 21).  There is no evidence before the Court concerning the actual height of the heels.  In her deposition however Ms. Ramseur admits to wearing "high heels."

The handbook (*Postal Employee's Guide to Safety*) does not establish the liability of the United States.  First, the handbook is a reference guide; it is not a statute or an ordinance. Second, this non-binding guide applies to postal employees, *not* to members of the general public such as Ms. Ramseur.

14

For the foregoing reasons, the Court finds Ms. Ramseur has not met her burden of showing the negligence of the United States.  There are genuine issues as to material fact and thus Ms. Ramseur is not entitled to a partial judgment as a matter of law.  Fed. R. Civ. P. 56( c).

B.      *Defendant's Cross-Motion for Summary Judgment*

The United States argues it was not negligent because the mat was not a dangerous condition.  Alternatively, Ms. Ramseur is not entitled to recover damages because the perforated mat, as a matter of law, was an open and obvious condition.  Additionally, Ms. Ramseur was contributorily negligent by her admitted failure to look where she was walking while wearing shoes with a narrow heel.  Finally, the United States contends Ms. Ramseur assumed the risk because upon entering the well-lit conference room, Ms. Ramseur either walked across or walked around the mat while walking in heels and she freely chose to approach the mat as she exited the conference room.  For these reasons, the United States claims it is entitled to judgment.

1.      *Not a Dangerous Condition*

The United States contends the perforated rubber mat was not a dangerous condition which required the United States to warn Ms. Ramseur, an invitee to the Post Office.  According to the United States, in Plaintiff's Response to Defendant's Interrogatory No. 10,[3] Ms. Ramseur claimed the United States is negligent because the perforated mat had oversized holes.  The United States notes Ms. Ramseur has not presented any evidence that the mat was worn or defective or in any way inappropriate under the circumstances.  Def.'s Mem., at 9.  "[A] perforated mat, in and of itself, is not dangerous."  *Id.* at 8 (citing "See Bender v. Nalee, 274

---

[3] The United States makes several references to Ms. Ramseur's responses to interrogatories.  The Court has not been provided a copy of Ms. Ramseur's responses.

A.2d 85, 88 (Md. 1971) (affirming grant of JNOV for defendant where plaintiff fell after her heel was caught in perforated rubber mat)[.]").

The undisputed facts are that Ms. Ramseur was wearing high heels when she entered the Post Office, that the conference room where the eBay presentation was held was well-lit, that Ms. Ramseur did not look down as she walked into the conference room, and that, in walking diagonally from the door to the chair she initially sat in, Ms. Ramseur either walked across or walked around the perforated mat.

During the colloquy between counsel for the United States and Ms. Ramseur, she conceded, if she had looked down when she got up to depart the conference room, she would have seen the perforated mat:

> Q:  The lighting was still good . . .
>
> A:  Yes.
>
> Q:  . . . as you were leaving the room?
>
> A:  Yes.
>
> Q:   You got up and you walked over part of the mat and then towards the end of your traversing the mat your heel got stuck in one of these holes, as I understand it?
>
> A:  Apparently, yes.
>
> Q:  And that caused you to fall?
>
> A:  Yes.
>
> Q:  Is it accurate for me to say that had you looked down as you were going from point B [on the diagram Ms. Ramseur drew - Exhibit #1] to the door, you would have seen the mat?
>
> A:  If I had looked down, I would have seen the mat, yes, if I looked down.

16

\*       \*       \*

Q:   Now, it's been a long time since I used high heels, but my understanding is that women are generally sort of cautious about walking on things that have holes in them like [the perforated mat], like grates in the sidewalk and things like that.

A:   Most definitely, because your heels will get caught.

Q:   Okay.  And when you're wearing heels like you've got on the shoes you've got here today, you know that that's an issue when you're walking along.  Is that a fair statement?

A:   If I'm outside and I see – – you know, because you're more aware of the ground outside than you are inside.  The room was not that big. I was not paying any attention to the floor, and I had no idea that they would have outdoor mats[4] in the middle of the floor.  I really didn't pay attention to that.

\*       \*       \*

Q:  And had you looked down and had you seen the holes in the mat, you would not have needed a warning, correct?  Because you would have realized the mat presents something of an issue for a lady who's wearing high heels, correct?

A:   Yeah, and I would have also understood that that's an outdoor mat, so yeah, I would be more cautious.  Just like I said, I'm more cautious outside walking than I am inside walking.

Def.'s Mem., Ex. A (Ramseur Dep. 32:7 - 22, 33:11 - 34:2, 35:10 - 18).

"[T]he possessor of land is liable [for] harm to an invitee only if he realizes a potentially dangerous condition of which he is or should be aware constitutes an unreasonable risk to the invitee, has reason to believe the invitee will not discover or realize the risk and fails to warn the invitee.  In considering whether the invitee will discover and realize the risk, the owner is

---

[4] The Court concurs with the United States that, in her motion for partial summary judgment, Ms. Ramseur appears to have abandoned her argument that the perforated mat was "inappropriate" because it was an "outdoor" mat and instead claims the mat was inappropriate under the circumstances.  *See* Mem. Law Supp. Def.'s Cross-Motion Summ. J. ("Def.'s Mem."), at 8 n.8.

17

entitled to assume that [the invitee] will act as would a reasonable man." *Finkelstein v. Vulcan Rail & Constr. Co.*, 224 Md. 439, 442, 168 A.2d 393, 394 (1961).  Through her testimony, Ms. Ramseur admits she failed to exercise ordinary care for her own safety by looking down as she walked towards the door of the conference room in her high heels.  "[I]f the appellee did not look where she was going, and allowed part of her foot to get under the matting so that she tripped, that cannot be attributed to the negligence of the landlord[.]"  *Ross v. Belzer*, 199 Md. 187, 193, 85 A.2d 799, 801 (1952).

   2.   *Alternatively, Open and Obvious Danger*

   The United States argues, in the alternative, that if the perforated mat was a dangerous condition, it was an open and obvious condition that Ms. Ramseur could have avoided by exercising ordinary care for her safety.  Ms. Ramseur concedes she either walked across or walked around the perforated mat when she entered the conference room.  After the conclusion of the presentation and her one-on-one discussion with the speaker, Ms. Ramseur admits she did not pay any attention to the floor as she got up and began walking towards the door while wearing high heels.  An owner owes a duty to an invitee to warn of known hidden dangers, not open or obvious ones.  *Yaniger v. Calvert Bldg. & Constr. Co.*, 183 Md. 285, 288, 37 A.2d 263, 264 (1944).

   During her deposition Ms. Ramseur conceded, if she had looked down, she would have realized the potential danger and thus a warning would not have been necessary.

>    Q:  And had you looked down and had you seen the holes in the mat,
>    you would not have needed a warning, correct?  Because you would
>    have realized the mat presents something of an issue for a lady who's
>    wearing high heels, correct?
>
>    A:   Yeah, and I would have also understood that that's an outdoor

18

mat, so yeah, I would be more cautious.  Just like I said, I'm more
cautious outside walking than I am inside walking.

Def.'s Mem., Ex. A (Ramseur Dep. 35:10 - 18).

In her declaration Ms. Wong described the mat as "a *large* rubber mat with perforations[.]"
*Id.*, Ex. B (Wong Decl. ¶ 5) (emphasis added).  Although the diagram Ms. Ramseur drew during her
deposition, *see* Def.'s Mem., Ex. A (Exhibit #1), is not to scale, her sketch does depict the mat as
prominent in the conference room.  Ms. Ramseur testified that the perforated mat was "in the middle
of the floor[,]", *id.*, Ex. A (Ramseur Dep. 34:1 -2), indicating the mat was not in an obscure or
hidden location.  There is no doubt that the perforated mat was open and obvious:

> Q:  [C]an we agree that as you were leaving, if you had looked down
> you would have seen the mat and you would have seen the holes.  Is
> that correct?  Can we agree on that?
>
> A:  Yes, if I had looked down, yes.

*Id.*, Ex. A (Ramseur Dep. 34:15 - 19).

"[T]he invitee has a duty to exercise due care for his or her own safety.  This includes the
duty to look and see what is around the invitee."  *Tennant v. Shoppers Food Warehouse Md.
Corp.*, 115 Md. App. 381, 389, 693 A.2d 370, 374 (1997).  Thus, even if the United States
created a dangerous condition by placing the perforated mat on the floor of the conference room,
when the danger is obvious to an invitee, the United States is not liable for injuries resulting
from the invitee failing to heed the danger.  *Yaniger*, 183 Md. at 288, 37 A.2d at 264.  "[T]here is
a corresponding duty imposed on the invitee to use care in avoiding an obvious danger[.]"  *Id.*

   *3.     Even if Negligent, Contributory Negligence Precludes Recovery*

Although there is insufficient evidence establishing negligence by the United States, for
purposes of this analysis, the Court assumes the United States was negligent by placing a

perforated mat in an area used by the general public.  This perforated mat, as Ms. Wong admits, is "a 'stress mat' that is typically used by Post Office clerks and carriers when standing indoors at their duty stations for extended periods of time."  Def.'s Mem., Ex. B (Wong Decl. ¶ 5).  Ms. Ramseur however would not be entitled to recover damages because of her contributory negligence.  Contributory negligence is a complete defense in Maryland.  If a plaintiff's negligence was a cause of the injury, the plaintiff cannot recover damages.  *Faith v. Keefer*, 127 Md. App. 706, 746, 736 A.2d 422, 443 (1999).  The defendant bears the burden of demonstrating by a preponderance of the evidence that plaintiff's own negligence was a cause of plaintiff's injury.

Negligence is defined as:

> [D]oing something that a person using reasonable care would not do, or not doing something that a person using reasonable care would do. Reasonable care means that caution, attention or skill a reasonable person would use under similar circumstances.

*Maryland Civil Pattern Jury Instruction* ("MPJI-Cv") 19:1 (2007).

It is undisputed the lighting was good in the conference room.  Ms. Ramseur was wearing high heels.  She either walked across or around the perforated mat when she entered the conference room to listen to the speaker.  Ms. Ramseur admitted she usually does not look down when walking in a room, particularly when walking indoors, and failed to look at the floor on the day of the accident.  Her contributory negligence is acknowledged in the following colloquy:

> Q:  [M]y understanding is that women are generally sort of cautious about walking on things that have holes in them like [the perforated mat], like grates in the sidewalk and things like that.
>
> A:  Most definitely, because your heels will get caught.

Def.'s Mem., Ex. A (Ramseur Dep. 33:12 - 17).

A reasonable person, wearing high heels, would at least glance briefly to the floor to ensure no objects pose a hazard or are an obstacle.  Ms. Ramseur failed to act as a reasonable person and thus her negligence contributed to the accident.  Her contributory negligence bars a recovery.

>        4.        *Even if Negligent, Assumption of the Risk Bars Recovery*

If the Court finds the United States was negligent for placing a perforated mat on the conference room floor, the United States can assert the defense of assumption of the risk, a complete defense in Maryland which bars recovery.  "A person assumes the risk of an injury if that person knows and understands the risk of an existing danger or reasonably should have known and understood the risk of an existing danger, and voluntarily chooses to encounter the risk."  MPJI-Cv 19:13.  Ms. Ramseur walked across or around the perforated mat upon entering the conference room.  During her deposition she acknowledged a perforated mat is an obvious danger to an individual wearing high heels.  "'In determining whether a plaintiff had knowledge and appreciation of the risk, an objective standard must be applied and a plaintiff will not be heard to say that he did not comprehend a risk which must have been obvious to him.'"  *ADM P'ship v. Martin*, 348 Md. 84, 91, 702 A.2d 730, 734 (1997) (quoting *Gibson v. Beaver*, 245 Md. 418, 421, 226 A.2d 273, 275 (1967)).  A reasonable person wearing high heels would have looked down to the floor, noticed the perforated mat, and taken precautions to avoid tripping.

The conference room was well-lit; the perforated mat was open and obvious.  Because Ms. Ramseur walked across or around the perforated mat upon entering the conference room, she knew or should have known the potential danger of a perforated mat to an individual wearing high heels.  Nonetheless, Ms. Ramseur voluntarily walked towards the door of the conference

21

room to depart without looking down to the floor.  She voluntarily chose to encounter the risk, *i.e.*, the perforated mat.  Her assumption of the risk bars recovery.  *See Morgan State Univ. v. Walker*, 397 Md. 509, 919 A.2d 21 (2007).

## CONCLUSION

For the foregoing reasons, the Court finds there are genuine issues as to material fact and thus Plaintiff is not entitled to a partial judgment as to Defendant's negligence as a matter of law. Fed. R. Civ. P. 56( c).  The Court however finds there are no genuine issues as to any material fact and thus Defendant is entitled to a judgment as a matter of law.  *Id.*  An Order will be entered separately.

October 31, 2007                                              /s/
_____                    _____
        Date                                              WILLIAM CONNELLY
                                                  UNITED STATES MAGISTRATE JUDGE

22